Harper, J.
That in some instances an action of trespass may be maintained against a corporation, I do not question, though many authors have expressed a contrary opinion. So far as I have been able to examine, this opinion in every instance has been derived from what is said in Brooke, Ab. tit. Corporation, pl. 43, referring to 22 Ass. pl. 67, that an action of trespass will not lie against a corporation aggregate, because capias and exigent, which are the proper process in an action of trespass, do not lie against a corporation. This process is directed only against the person. The leading modern, cases on the subject, in all of which it is very fully examined, are those of Yarborough v. The Bank of England, 16 East, 6; Chesnut Hill Turnpike Company v. -; 4 Serg. & Rawle, 6, and Kiddell v. Proprietors of locks and canals on Merrimack river, 9 Mass. 169. With respect to all of these, it may be observed that they were actions of trespass on the case, and they might, therefore, seem inapplicable to actions of trespass vi et armis. By the ancient common law, there was no process against the person, but only against the property, for all injuries unaccompanied with force. For injuries committed with force, the capias against the person was given, and the exigent process preparatory to outlawry. 3 Black. Com. 281. By various statutes, the same process was allowed *574 *n act‘ons of accounts, of debt, of detinue, and by that of 19 H. 7, c. 9, in all actions on the case. Blackstone observes that before the last statute, a practice had prevailed of bringing original writ in trespass vi et amis, which subjected to capias, anc] afterwards, by connivance of the Court, the plaintiff prosecuted for less forcible injury. Yet the determinations in all the cases I have referred to, were founded entirely on the more ancient decisions, in which trespass vi et amis, against a corporation, was sustained; and in all of them it is regarded as a matter of indifferent inquiry, whether the action of trespass on the case, or vi et amis, might be maintained in an action for a tort. I do not think it necessary to go over in detail the various ancient authorities referred to in the cases I have quoted. They are also collected by Kyd in his treatise on Corporations, p. 323 and seq., who, however, comes to a different conclusion, upon no other authority than that referred to in Brooke. It is enough that there are many instances of such actions, brought without objection. The reason assigned'that capias and exigent do not lie against a corporation, is plainly insufficient. The plaintiff might proceed against a corporation by distringas, and in no action of trespass vi et amis was he compelled to resort to the capias or exigent. The authority-in Brooke is lessened by what is said lb. pi. 48, that a corporation cannot be aiding to a trespass, or give a warrant (guaranty) to commit a trespass, without writing. In Yarborough v. The Bank of England, Lord Ellenborough quotes other passages from Brooke, which plainly suppose that such an action may be supported.
The reason given by Kyd for his opinion, that the action supposes a personal act of which the corporation is incapable in its collective capacity, seems to be rather a verbid one. It is true that a corporation has no hands to commit a trespass; but undoubtedly it may, as a corporation, command a trespass, and he who commands a trespass is deemed in law to be a principal in committing it.
But a distinction has been made with respect to a private corporation, exercising its corporate functions for the benefit of its members, and public corporations, or those instituted for the purposes of government. In Kiddell v. Proprietors of locks and canals on the Merrimack river, before referred to, it is said by Chief Justice Parsons, “ We distinguish between proper aggregate corporations, and the inhabitants of any district, who are, by statute, invested with particular powers without their consent.” These are in the books sometimes called quasi corporations; of this description are counties and hundreds in England. Although quasi corporations are liable to information or indictment, for neglect of a public duty imposed on them *575 by law, yet it is settled in the case of Russel et al. v. Inhabitants of the county of Devon, that no private action can be maintained against them for a breach of their corporate duty.” It seems to me that the case of Russel v. The men of Devon, 2 T. R. 667, is determined on the ground that the inhabitants of the county are not a corporation. Lord Kenyon says that the question is, whether this body of men, who are sued in the present action, are a corporation, or quasi a corporation against whom such an action may be maintained. This question he decides in the negative, and remarks that when the legislature, by the statute of Winton, gave an action against the hundred, they converted the hundred into a corporation for that purpose. But in Mower v. The Inhabitants of Leicester, 9 Mass. 247, which was an action on the case against the inhabitants of a town, for not repairing a bridge, though it appears that the town was a corporation created by statute, it was said by the Court that corporations created for their own benefit, stand on the same ground as individuals. But quasi corporations, created by the legislature for purposes of public policy, though subject to indictment for neglect of duties imposed on them by law, are not liable to an action, unless the action be given by statute ; and in Fowle v. Common Council of Alexandria, 3 Peters, 409, which was an action on the case, against the Council, for licensing an auctioneer without taking proper security, it is observed by Chief Justice Marshall, “ that money corporations, or those carrying on business for themselves, arc liable for torts, is well settled; but that a legislative corporation, established as part of the government of the country, is liable for losses sustained by a non-feasance, by an omission of the corporate body to observe a law of its own, for which no penalty is provided, is a principle for which we can find no precedent.” The ancient English authorities do not appear to me to recognize this distinction. They were mostly against civil or public corporations; as against the Mayor and Commonalty of York, the Mayor and Commonalty of Hull, and of New Windsor. The decisions made in our own State, however, have followed the distinction made by the American cases. In the case of Young v. The Commissioners of roads for Edgefield,* which was an action on the case, against the commissioners, for neglecting to repair a bridge, in consequence of which the plaintiff lost a horse, it was determined that though an indictment would lie against such a corporation for neglect of duty imposed on them by law; yet no action for such neg. lect could be maintained by an individual, unless it were given by statute. There was also another decision at Columbia, to the same effect. As, I have before observed, from the whole current of authorities, it is plain that the same rule is applied *576 actions 011 tbe case and of trespass m et armis, the question is whether a corporation is liable for a tort. These cases nlust> therefore, determine the present, and perhaps there is much reason for this distinction. Such a public cor-p0ra.ti0n is regarded as the agent of the legislature for the purposes of government, and the legislature may control or abolish if, in case of an abuse of its authority. A private corporation holds its franchises by contract, independently of the will of the legislature, and for any omission or malfeasance, can only be rendered liable by proceeding in Court. Perhaps, too, it may well be doubted whether the City Council, in the case before us, did authorize the commission of a trespass. It is said in Dyer, 36, b, that “a man may justify pulling down an house on fire, for the safety of the neighbouring houses, for these are cases of the common weal.” In Respublica v. Sparhawk, 1 Dal. 363, this is taken by Chief Justice M’Kean, to mean that a man may justify the pulling down a house which it is necessary to pull down, in order to save the neighboring houses from fire. Whether it be strictly a justification or no, it is certain that if a man, to save neighbouring houses from fire, pulls down a house necessary to be pulled down, and which would otherwise have been burnt, the owner of the house could, at most, recover only nominal damages. He has sustained no injury. Now the ordinance of the City Council authorizes two fire masters, or the intendant or two wardens, to pull down or blow up such houses “as may be judged necessary,” that is, 1 suppose, as they may judge necessary. It is argued that as the pulling down, &c. &c. is referred to the discretion of those officers, the Council ought to be answerable in case of an abuse of that discretion. Yet, suppose the ordinance had authorized the officers to pull down or blow up such houses as may be necessary, could it be said hero that it had authorised a trespass ? It seems not, if it be no trespass to pull down a house in case of such necessity. Yet if such had been the terms, the same sort of discretion must necessarily have been implied. The officers must judge whether the necessity existed. I have little doubt that if a public corporation, in bad faith, should authorize or direct the commission of an unlawful act, the individual members who voted for the measure would be personally liable. It would be unjust that the whole corporation -should be liable, or the members who opposed the measure.
The motion is dismissed.
Johnson and O’Neall, Js. concurred.

 Not reported.