April Term, 1880.

CASE No. 909.

STATE v. BALDWIN.

1. In the absence of a statute providing compensation to county treasurers, such an officer has, for his services, no legal claim which can be determined by the court or jury, or asserted as a defence or discount to an action brought against him by the state to recover a balance of taxes collected by him, but retained as reasonable compensation for such services.

2. In the absence of a statute authorizing compensation to county treasurers for the collection of county taxes, the amount of commissions proper to be retained in such case must be submitted to the county commissioners for audit, and cannot be determined by the verdict of a jury.

3. A county treasurer and the sureties on his official bond held liable for a defalcation committed by such treasurer more than two years after the execution of such bond, there being at that time no law limiting the tenure of office of the county treasurers.

4. In an action against A, B and C, the jury having returned a verdict, "we find for the plaintiff the sum of $3110.74, against A," the Circuit judge recommitted the case to the jury with instructions to find a complete verdict. *Held,* that there was no error in the action of the Circuit judge.*

Before MACKEY, J., Richland, November, 1879.

Action commenced in May, 1879, by the State of South Carolina against C. H. Baldwin, W. J. Duffie and J. H. Kinard, upon the official bond of Baldwin, county treasurer of Richland, dated February 1st, 1871, to recover $1543.63 for the state, and $1611.11 for Richland county, of moneys collected for taxes during fiscal year of 1873, and ascertained to be due upon settlement made with comptroller-general in September, 1874. At such settlement, Baldwin claimed four *per cent.* commissions upon the amounts collected, but the comptroller-general allowed $2000 for collecting state taxes, and $500 for collecting county taxes. The complaint, in this action, conceded to Baldwin the $2500, and demanded the sums already stated, which represent the difference between the compensation claimed by Baldwin and

* See *State* v. *Corley,* (3) 13 *S. C.* 1.

that allowed him.    For all other moneys the defendant had fully accounted.

The defences relied upon were that there was no breach, all moneys received having been accounted for, and that plaintiff had no right of action against the defendants.

So much of the evidence as is material is stated in the opinion.

The Circuit judge was requested by defendants to charge *inter alia*—

3. That there being, in the words of the counsel for the state, no law fixing the compensation of county treasurers, there could be no charge of compensation in violation of law, and the verdict therefor must be for the defendants.

4. That there is no statute fixing the compensation of the treasurers, and that when there is no law fixing the compensation, the officer is entitled to a reasonable compensation, and that is a question of fact for the jury.

The presiding judge refused to charge as prayed, and in lieu thereof, instructed the jury that there was no law fixing the compensation of the treasurer, and that the treasurer was not entitled to any compensation whatever, for his services in that capacity, in the absence of a statute fixing it.

That the treasurer, Baldwin, was not entitled to retain anything whatever, for his compensation ; but as the plaintiff's attorney had admitted that the treasurer was entitled to deduct $2500 per annum, as compensation, and had only sued for the excess, the jury could allow to the defendant, Baldwin, the sum of $2500 as compensation.

That according to the law in force at that date, there was no fixed and definite term to the office of county treasurer, but that he was appointed during good behavior, or until his successor was appointed and qualified.

The jury found the following verdict: " We find for the plaintiff the sum of $3110.74, against C. H. Baldwin." The counsel for plaintiff then moved that the verdict be recommitted to the jury, with instructions that they should find a complete verdict, either for the plaintiff or for the defendants, and that if they found for the plaintiff, the plaintiff would be entitled to interest from the date of the defalcation.

The counsel for defendants objected to the verdict being recommitted. The court stated that the jury must find a complete verdict.

The counsel for the defendants then requested the court to charge the jury that they had the right to find for the plaintiff as against Baldwin, and yet to find at the same time for the defendants, Duffie and Kinard, the sureties of Baldwin.

The court refused to charge as requested by counsel for defendants, to which refusal counsel excepted.

The verdict was then recommitted to the jury with the instructions prayed for by the counsel for the plaintiff. On recommitting the verdict to the jury, the court said : " Gentlemen of the jury : This is an action against C. H. Baldwin, county treasurer, and the sureties upon his official bond. If he committed a defalcation at the date alleged in the complaint, and had not then been re-appointed, his sureties are liable. You are the sole judges of the evidence, but you must find a complete verdict, either for the plaintiff or for the defendants. Whatever verdict you may find, will be satisfactory to the court, provided that it is a verdict upon which judgment may be entered up."

And the jury retired, and shortly after returned into court and rendered the following verdict :

" We find for the plaintiff the sum of $3110.74 with interest."

To all of which refusals and to the instructions granted, the defendants then and there excepted ; and afterwards appealed to this court.

*Mr. James Conner,* for appellants.

*Mr. Solicitor Abney,* contra.

August 31st, 1880. The opinion of the court was delivered by

McIVER, A. J. This was an action against Baldwin, as county treasurer, and the other defendants, as his sureties on his official bond, to recover certain amounts which, it was alleged, had been collected by Baldwin, as county treasurer, and not accounted for properly to the plaintiffs. There was no dispute about the fact that the money had been collected, and the only

controversy was as to whether it had been properly accounted for—the defendants contending that the amounts claimed by the plaintiffs were lawfully retained by Baldwin for commissions due to him as county treasurer. The real question, therefore, is whether the law, as it stood at the time of Baldwin's appointment, and at the time of the alleged default, allowed any commissions to a county treasurer, and, if so, how much. It is conceded that there was, then, no statute fixing the compensation to be allowed county treasurers, and the Circuit judge so instructed the jury, and, further, that in the absence of any such statute the treasurer was not entitled to any compensation. To this charge exception was duly taken, and the judge was requested to charge that, in the absence of a statute fixing the compensation of a county treasurer he would be entitled to a reasonable compensation, the amount of which would be a question for the jury, which was refused. We think that there was no error in the charge or refusal to charge as requested. One who renders service to the state, for which there is no compensation provided by statute cannot, as in the case of services rendered to a private person, raise an implied *assumpsit* against the state, and for such service he has no *legal* claim, that is, no claim which can be enforced by process of law. He cannot make such claim the basis of an action against the state, for the state cannot be sued in its own courts, except by its own consent, nor can he interpose such claim as a discount or set-off, which is nothing but a cross-action to an action brought against him by the state. *Treasurer* v. *Cleary,* 3 *Rich.* 372. The money which Baldwin collected constituted a part of the taxes due to the state, and the law, (*Gen. Stat., Chap. XIII.,* § 12, *p.* 84,) required that "*all* the moneys collected by him for or on account of the state taxes" should be paid to the state treasurer, and, when paid into the state treasury, not one dollar of it could be withdrawn except "in pursuance of appropriations made by law." *Const., Article IX.,* § 12. If, then, there was no statute authorizing the county treasurer to retain anything for his commissions he was bound to forward every dollar of taxes collected by him to the state treasurer, and if there was no act appropriating any sum for the payment of his commissions, as it is not pretended that there is,

he could not lawfully claim any compensation whatever, and for payment, even assuming his claim to have been of the most righteous character, he must, like all other persons having claims against the state, resort to his petition to the legislature, the body which is exclusively entrusted with the power of disposing of the revenue. It is clear, therefore, that the question as to what was a reasonable compensation for his services could not have been left to the jury, for as is said in Treasurer *v.* Cleary, *supra :* " If that were allowed it is obvious the revenue would be under the control of the court and jury and not the legislature."

So far as the taxes collected for the county were concerned, it is very clear, in the absence of any statute authorizing the county treasurer to retain a certain percentage thereon for his commissions, that any claim which he might have against the county for compensation for his services in collecting the county taxes could not be determined by the verdict of a jury, but, like all other claims against the county, should have been submitted to the county commissioners to be audited, and could only be paid upon their order.

The next question is as to the tenure of office of a county treasurer. As the law stood at the time of Baldwin's appointment, and at the time of the default alleged, there was no statute fixing the term of office of a county treasurer. The original act providing for the appointment of such an officer, act of September 15th, 1868, (14 *Stat.* 66), simply invests the governor with power to appoint county treasurers, by and with the advice and consent of the senate, but makes no provision as to the duration of their term of office, and by a subsequent act of February 3d, 1870, (14 *Stat.* 329), the governor was authorized " whenever to him there appears good and sufficient cause," to remove any county treasurer and report the fact, together with his reasons therefor to the general assembly. Thus the law stood at the time, though there has been, subsequently, an act passed limiting the term of office of county treasurers to two years. Act of March 19th, 1874. 15 *Stat.* 777.

It is plain then that unless Baldwin was removed from office by the governor he would have had the right to hold the office from

the time of his original appointment in February, 1871, up to and after the time when he was alleged to be in default by a failure to account for all the taxes collected in 1873, and that his official bond, originally given, would cover that period, and for any default committed during that time his sureties would be liable. It will be observed that there is not the slightest evidence that Baldwin was ever removed from office by the governor, and if he was never removed we do not see how he could be re-appointed, unless he had resigned, of which there is no pretence. Indeed, as it appears to us, there cannot be said to be any evidence tending to show that he was ever re-appointed. Baldwin himself does not say so, but only says, what, if objected to would have been incompetent, that Governor Moses told him that he had re-appointed him. He does not pretend that he gave any new bond, but, on the contrary, says he did not give a new bond. He produced no new commission, and does not pretend to claim that he ever had a new commission, while the books of the secretary of state's office show only one appointment, and the records of the treasurer's office only one bond. Under this state of the evidence the Circuit judge might possibly have been warranted in declining to refer the issue of fact as to whether Baldwin had been re-appointed to the jury upon the ground that there was in reality no testimony upon which such issue could be raised, but, in fact, the judge practically did leave that issue to the jury by saying : " If he committed a defalcation at the date alleged in the complaint, *and had not then been re-appointed,* his sureties are liable."

Our next inquiry will be whether there was any error of law committed in recommitting the case to the jury after the first announcement of the verdict. It is a very common practice, one which has the sanction of long usage, and is undoubtedly correct, for a Circuit judge to recommit the record to the jury after their verdict has been announced for the purpose of enabling them to put the verdict in proper and complete legal form, and this seems to have been the purpose in this case. 'The action was against three persons, and the verdict, as first announced, was manifestly incomplete and not in legal form ; while it determined the issues as between the plaintiffs and one of the

defendants, as to the other two it left the issues wholly undetermined. The jury, therefore, when they first announced their verdict, had maifestly failed to complete their task, and the judge properly recommitted the case to them for the purpose of enabling them to finish their work. The case was not recommitted because the jury had made an incorrect finding, but because they had failed to find at all as to two of the defendants. If the verdict, as first announced, had been in favor of the plaintiffs as against Baldwin, and in favor of the other two defendants, then, even though it may have been manifestly without any evidence to sustain it so far as these two defendants were concerned, the case could not have been recommitted to the jury with instructions to find another verdict, for in such case the verdict would have been complete, and, however erroneous it might be, it would have to stand until set aside by a proper proceeding for that purpose. It may be, and doubtless was true, that the jury, while satisfied that a verdict should go against Baldwin, were desirous of releasing the sureties, *if they could do so legally ;* but when they were told, and correctly told, that if Baldwin had not been re-appointed at the time he committed the defalcation charged, the sureties were legally liable, they could no longer hesitate, and therefore returned the verdict against all of the defendants.

The exceptions taken to the amount of interest allowed have not been pressed in the argument here, and, therefore, we are not informed of the grounds upon which it is claimed that there was error in this respect, and we have not been able to discover any.

The judgment of the Circuit Court is affirmed.

WILLARD, C. J., and McGOWAN, A. J., concurred.