### CHAPMAN v. CITY COUNCIL OF CHARLESTON.

1. The judgment of the Circuit Court may be affirmed upon grounds other than those upon which it is based, but it may not be reversed upon a ground which was neither taken nor considered in the court below, unless such ground be one of jurisdiction.

2. If the plaintiffs are not referred to in the complaint with sufficient distinctness, a motion to make the complaint more definite, and not demurrer, is the proper remedy.

3. A complaint demanding an accounting by defendant corporation for stock illegally transferred, does not fail to state facts sufficient to constitute a cause of action in omitting to allege a specific description of the stock and a demand for its retransfer.

4. *Query.* Is a municipal corporation liable for a tort committed by its authority by reason of some malfeasance or misfeasance in the performance of some duty which is not of a public, but only of a private, nature ?

5. An action against a municipal corporation for an account of the value

of certificates of stock transferred otherwise than as agreed upon in the certificates themselves, is an action *ex contractu* and not an action of tort.

6. A municipal corporation is liable for an illegal transfer of stock by its officers or agents.

Before FRASER, J., Charleston, July, 1887.

The question raised on this appeal is whether the complaint stated facts sufficient to constitute a cause of action. The complaint was as follows:

The plaintiffs, complaining of the defendants, allege:

I. That the said, The City Council of Charleston, is a municipal corporation, duly created by and under the laws of South Carolina.

II. That James Chapman, late of Charleston, made and executed his last will and testament and codicil thereto, dated respectively, May 27, 1856, and July 5, 1856, whereby he appointed his sons, Thomas E. Chapman, James Chapman, and Robert B. Chapman, and John W. Caldwell, and James H. Wilson, and his wife, Isabella Chapman, executors and executrix of his said will, and authorized and empowered them to sell and dispose of such parts of his estate as they might think expedient except such public securities as by said will he directed to constitute the sum of twenty-five thousand dollars for each of his said daughters, and his dwelling house, with the furniture, plate, servants, and appurtenances which had been set apart as a home for his wife and children.

III. That by his said will the testator gave to each of his daughters, that is to say, Isabel L. Chapman, Alice Chapman, and Jesse Hannah Chapman, the sum of $25,000 to be taken in the most secure investments owned by the testator, such as stocks or bonds of the city of Charleston, or the stocks of the State of South Carolina, and he directed that the sum of twenty-five thousand dollars so given to each of his daughters, as also such other portions of his estate as each of them might be entitled to receive in the final division of his estate, should be taken and held by J. W. Caldwell, W. C. Bee, and George M. Coffin, as trustees for each of his daughters, to be held by them in strict

settlement, but that in the event that either or all of his daughters should die unmarried, without leaving issue surviving them, the share or portion of his estate to such daughters given should cease and determine and be divided among his other children, share and share alike. That by his said will the testator devised and bequeathed to his widow for life or widowhood, the use of his house, No. 4 Water street, with furniture, plate, servants, and everything appertaining to the same, and directed his executrix and executors to set apart and invest in secure public securities the sum of thirty thousand dollars for her benefit, the annual interest or income to be paid to her during her life or widowhood, and from and after her death or marriage every part thereof to be immediately divisible among his children, in equal parts or shares, each of the parts or shares coming to his daughters to be held and taken for their use in the manner provided for the bequest previously made to them, and the part or share coming to his sons be held and taken by them in the manner hereafter to be expressed of and concerning the shares or portions of testator's estate which they shall be respectively entitled to take under testator's said will.

IV. That the trusts expressed of and concerning the shares given to testator's sons are contained in the following clause of testator's will: "My sons shall respectively be entitled to shares or portions corresponding in amount with the sums, by me, given to my daughters, if my estate shall be sufficient to do so, and when the shares of my sons shall be made equal to the shares which I have given to my daughters, then the rest and residue of my estate, of whatsoever and all kinds consisting, shall be equally divided among all my children, share and share alike, the shares or portions coming to my daughters to be held and taken in the manner hereinbefore expressed and declared by me; and the shares or portions coming to my sons to be held by them in the manner following, that is to say, they if they or either of them shall die unmarried and without issue, then the share or portion of my estate shall thereupon revert to my other children, and be divisible among them, share and share alike, if more than one, and if but one, then to that one absolutely and forever; but in case that son or sons, having married, shall die leaving a child

or children surviving him or them, in such case, the share or shares of such son or sons shall belong to such child or children, if more than one, absolutely and forever, and in such case the child or children shall represent the parent or parents and take share or shares to which such parent would have been entitled." All of which will more fully appear by reference to said will of record in the Probate Court for said county, and to which plaintiffs crave leave to refer as often as may be necessary.

V. That the testator, James Chapman, died in the year 1859, leaving said will and codicil unrevoked and in full force and virtue, and the same were proved before the ordinary of Charleston, on February 7, 1859, and at the same time qualified John W. Caldwell, Robert B. Chapman, and James H. Wilson; that James Chapman, jr., qualified as executor subsequently, to wit, in February, 1860. That Isabel Chapman and Thomas E. Chapman never qualified thereon.

VI. That the testator, James Chapman, departed this life seized and possessed of a house and lot on the north side of Water street, in the city of Charleston, known as No. 4, of two houses and lots on the south side of Water street, known respectively as Nos. 1 and 3, and of stocks, bonds, and other personal property to a large amount, including $50,000 of city of Charleston stocks, and $23,710 of State of South Carolina stocks, which he had directed to be set apart for his daughters.

VII. That one of the testator's daughters died in his life-time, and he left surviving his widow, Isabel Chapman, two daughters, Isabel Chapman and Jesse H. Chapman, and three sons, Thomas E. Chapman, James Chapman, and Robert Chapman. That his daughter Isabel Chapman died on or about July 29, 1864, and Jesse Chapman on or about December 11, both of them unmarried, and one of them under age.

VIII. That afterwards, to wit, on May 25, 1866, a bill was filed in this honorable court, by John W. Caldwell, Robert B. Chapman, James H. Wilson, executors, against Thomas E. Chapman, James Chapman, Robert B. Chapman, Isabella Chapman, Rosa Chapman, Julia Bell Chapman, and Jesse Chapman, for the settlement and division of the estate of said testator, in which the complainants alleged that they were ready and willing

to set apart the widow's shares, and to take an account, but were not willing to turn over to the sons the shares allotted to them, they being advised that said sons were not entitled to an absolute estate in the shares bequeathed to them, or to the custody and possession of said shares, but had only a qualified interest therein, the absolute interest being given to the children of said sons, and that it was the duty of the executors to hold the same for the benefit of those entitled thereto, on the happening of the contingencies specified in the will.    That to said bill the defendants, James Chapman and Thos. E. Chapman, filed their answer and afterwards, to wit, on April 20, 1866, the cause having come on to be heard, it was ordered, adjudged, and decreed by the court, that the sons of the testator were entitled to have possession of their respective shares whether their interest be absolute or only for life, the executors not having been appointed trustees of the testator's sons or directed to retain possession of their respective shares.    That by said decree it was referred to James Tupper, master, to inquire and report as to the shares to which the widow, Isabel Chapman, and the three sons, James, Thomas, and Robert Chapman, were respectively entitled to receive under the terms of the said will.    That on July 12, 1866, the said master filed his report, and among other things reported that under the provisions of the will the executors had allotted to the widow the following property: $7,000 house and lot, Water street; $20,000 city of Charleston 6 per cent. stock; $10,000 State of South Carolina 6 per cent. stock, and recommended that the allotment to the widow be confirmed.    That on July 21, 1866, on hearing the report of master Tupper, the solicitors of the several parties not objecting nor presenting exceptions thereto, it was ordered and decreed by the court that the report be confirmed, and that upon the executors of James Chapman, the testator, transferring to the defendants, James Chapman, Thomas E. Chapman, Robert B. Chapman, the property, real and personal, set forth in the report of master Tupper, as respectively and by their agreement to be taken by the several parties as that to which they are entitled under the will of their testator, the executors be discharged.

IX.    That the said Robert B. Chapman died on April 30, 1866, leaving surviving him the following children, to wit, Julia Isabel

Chapman and Jesse Chapman. That Thomas E. Chapman died on Febuary 16, 1868, leaving surviving him the following children, to wit, Robert B. Chapman and Isabella A. Briggs, a minor, and the wife of Henry W. Briggs. That James Chapman died on September 12, 1881, leaving surviving him the following children, to wit, Rosa Chapman, James Chapman, Robert Chapman, Georgie Chapman, and Hugh Banks Chapman, the last four of whom are all minors.

X. That Isabella Chapman, the widow, died on March 6, 1887, having survived all her children, and that upon her death her grandchildren became entitled to the city stock aforesaid, allotted to her under the decree of this court, as follows : the children of Robert S. Chapman to one-third among them ; the children of James Chapman to one-third among them ; the children of Thomas E. Chapman to one-third among them. That the said children of Robert B. and James Chapman have declined to unite in this action as plaintiffs. That each of said certificates for said stock contained the following provision : that the debt evidenced thereby was recorded in and transferable only at the office of the city treasurer by appearance in person or by attorney, according to the rules and form instituted for that purpose. That since the death of Isabella Chapman, the plaintiffs have discovered that ten thousand dollars of the said city stock as allotted to the said Isabella Chapman as aforesaid, was on or about June 22, 1869, transferred by the city of Charleston to some person or persons unknown to the plaintiffs, under and by virtue of an authority endorsed on the certificate of said stock, and signed by James and Robert B. Chapman ; and the remaining ten thousand dollars thereof was transferred by said city to some person or persons unknown, on or about August 13, 1867, under and by virtue of a like endorsement. That said transfers were illegal and void, and were made through the carelessness of the officers and agents of the city, and by reason thereof the said stock has been wholly lost to the plaintiffs and the other parties entitled thereto.

Wherefore, the plaintiffs pray that the city of Charleston may be required to deliver to the plaintiffs and the other parties entitled thereto, the said city stock so illegally transferred, or to account to them for the same.

Other matters are stated in the opinion.

*Mr. G. D. Bryan*, for appellant.

*Messrs. Lord & Hyde*, contra.

April 3, 1888.  The opinion of the court was delivered by

Mr. Justice McIver.  The only question raised by this appeal is whether the Circuit Judge erred in overruling the oral demurrer to the complaint, based on the ground that the complaint does not state facts sufficient to constitute a cause of action.  The complaint is quite long, and need not be inserted in full in this opinion, though a copy of it should be incorporated in the report of the case, for a full understanding of all the details.  It will be sufficient to state here that the object of the action is to make the City Council of Charleston liable for allowing an illegal transfer of certain certificates of city stock, in which the plaintiffs claim they are entitled to an interest.

The only papers incorporated in the record submitted to us are the complaint, the decree of the Circuit Judge, and the exception of appellants.  From these we learn that the only ground upon which the demurrer was urged before the Circuit Judge was that the action was for a tort and that, in the absence of any statute imposing such liability, a municipal corporation is not liable to such an action.  The Circuit Judge held, however, that "the complaint alleges a state of facts which shows a liability on the part of the said defendant, growing out of a contract and an illegal transfer to others of the evidences of the debt due on the contract; such transfer having been made by the officers of the defendant corporation."  He therefore held that the action was "for the specific delivery of certain city stock so illegally transferred, or for an account for the same, and is not one of those actions in which a municipal corporation is not liable."

He accordingly rendered judgment overruling the demurrer, and from this judgment the City Council of Charleston appeal upon the following grounds:  1st. That his honor erred in not dismissing the complaint herein, on the ground that this defendant, being a municipal corporation, is not liable in an action like

this, in the absence of an act of the general assembly giving such right of action. 2nd. That his honor erred in not holding that, if any liability existed, it was on the part of the officers of the city making the transfer, and that the doctrine of *respondeat superior* does not apply.

The counsel for appellants, in his argument here, has endeavored to sustain his demurrer upon grounds other than those presented to or decided by the Circuit Judge, and other than those presented in his exceptions. Under the well settled rules and practice of this court we are not at liberty to consider such grounds. The questions presented by these additional grounds do not appear to have been considered or determined by the Circuit Court, and therefore they present nothing for us to *review.* It is true, that this court has in many cases *affirmed* the judgment of the Circuit Court upon other grounds than those upon which it was based in that court; but this court has never undertaken to *reverse* a judgment upon a ground not taken in the Circuit Court or in the exceptions, unless it be for want of jurisdiction, which, as has been frequently held, may be taken at any time. The cases of *State* v. *Penny,* 19 *S. C.,* 218, and *Segler* v. *Coward,* 24 *S. C.,* 122, were both cases of jurisdiction.

We may say, however, that even if these grounds had been properly taken, we do not think they would have been sufficient to sustain the demurrer. The first, presenting an objection to the want of sufficient distinctness in the complaint, in referring to the appellants, is more properly a ground for a motion to make the allegations of the complaint more specific and definite rather than a ground for demurrer. The second and third, based on the want of a specific description of the certificates of stock and the failure to allege demand, even if conceded to be valid objections to an action for the specific delivery of the certificates of stock (as to which we say nothing), were certainly not sufficient to sustain a demurrer to an action calling on appellants to account for the value of the stock illegally transferred.

The real question then is, whether the action must be regarded as an action of tort to which a municipal corporation is not liable. It will be observed that the cases of *Coleman* v. *Chester,* 14 *S. C.,* 286; *Black* v. *Columbia,* 19 *Id.,* 412, and *Young* v. *Charles-*

*ton,* 20 *S. C.*, 116, cited by appellants to show that a municipal corporation cannot be made liable for a tort (to which may be added the case of *Gibbes* v. *Beaufort,* 20 *S. C.*, 213), were all cases in which it was sought to make a municipal corporation liable for tort by reason of some malfeasance or misfeasance in the performance of a *public* duty, imposed upon it as a governmental agency of the State. But whether a municipal corporation can be made liable for a tort committed by its authority, by reason of some malfeasance or misfeasance in the performance of some duty not of a public, but of a private, nature, a duty which it does not owe to the public generally, but one which it has assumed to a private individual, is a question which has not been argued, and which we are not now prepared to decide.

We will therefore proceed to consider the question whether this action must be regarded as an action of tort. We agree with the Circuit Judge that it is not to be so regarded. It is stated in the complaint that each of the certificates of stock contained a provision "that the debt evidenced thereby was recorded in and transferable only at the office of the city treasurer by appearance in person or by attorney, according to the rules and form instituted for that purpose." This provision necessarily implies an agreement on the part of the corporation that no other mode of transfer of the stock will be recognized by the corporation; and if there has been, as alleged, a breach of such contract, an action for the damages sustained thereby would be an action arising out of contract, and not an action of tort.

Again, in the case of *Magwood* v. *Railroad Bank,* 5 *S. C.*, 379, an action like this was sustained, not upon the ground of tort, but upon the ground that a corporation "is bound to protect the title of a *cestui que trust,* under a trust of its stock declared upon its books, against the exercise of powers forbidden by or inconsistent with the nature and terms of such trust." It is true that the corporation sued in that case was not a municipal corporation, but, so far as the question we are considering is concerned, that can make no difference. If, as alleged in the complaint, the stock was illegally transferred by the executors of the will, under which plaintiffs claim, such transfer was a breach of trust by the executors; and if, as is also alleged in the complaint,

the transfer could only have been made with the co-operation of appellants, acting through their officers appointed for the purpose, then the appellants would be participants in such breach of trust, and as such liable in equity to account to the *cestui que trust.* It seems to us, therefore, that the action need not necessarily be regarded as an action of tort, and that the Circuit Judge committed no error in overruling the demurrer.

As to the second ground of appeal, it would be sufficient to say that the question there presented does not seem to have been raised in the Circuit Court, but we may add that even if properly raised, it could not be sustained. A corporation can act only through its officers or agents, and the corporation is liable for the acts of such officers or agents within the scope of their authority.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.