Curia, per
Johnson, J.
The Act of 1815 (a) provides : “ That the sheriffs of the several Districts within this State, with whom executions for taxes shall be lodged by the collectors in this State, shall be, and they are hereby, required, within ninety days after receiving such executions, to make the Comptroller General a full and complete return thereof; and in case any sheriff shall fail or neglect to make such return, within the time prescribed by this Act, then and in that case it shall be the duty of the Comptroller General, and he is hereby enjoined and required, totalise such defaulting sheriff to be debited in the *374 books of the treasury with the full amount of his receipt, and such sheriff or sheriffs shall not afterwards be entitled to any credit for any executions returned by them after the expiration of the said ninety days, although such executions should be returned nulla bona or non est inventus."
This is a part of the system devised for the collection of the revenue of the State. If the citizen fail to pay his taxes within the time prescribed by law, the tax collector is authorized forthwith to issue execution against him and lodge the same in the sheriff’s office. The sheriff is bound to give him a receipt for the execution, and in the tax col-tector’s account with the treasury department, this receipt operates as a discharge to him and a charge upon the sheriff. The necessity for certainty and promptness in the collection of the revenue is too apparent to need an illustration ; and without the provision contained in this Act, the sheriff might delay it at his pleasure. The Act imperatively requires him to make his return within ninety days, a time reasonably long for the purpose, and charges him with the amount if he fail or neglect to do so. If he wilfully neglect or fail to do it, the court have no power to relieve him. He has violated the law, and must pay the penalty. We are equally well satisfied that there is nothing in the second ground of this motion. We have before us no evidence of any demand by the defendant against the State, but what is found in the resolutions of the Legislature, appended to the Acts of 1827, p. 81, in which, amongst the contingent accounts of the lower division of the'treasury, which were recommended to be paid, we find one of the defendant, Cleary, amounting to $3771.98; but the resolution adopting that report, (p. 83,) directs that amount to be paid, not to the defendant, Cleary, but to the Bank of the State, on account of a debt due by him to the said Bank — and, taken altogether, as the evidence in the case, it does not appear there is any thing due to the defendant which can avail him either as payment, discount or otherwise, for the sum is otherwise appropriated. The argument is, that this resolution furnishes evidence of a debt due by the State to the defendant: that the Legislature had no authority, without his assent, to apply it to the *375 payment of his debt to the Bank, and, therefore, he may well set it oíf as a discount against this demand. The constitution reserves to the Legislature the exclusive power of disposing of the revenue, nor will a suit lie against the State by an individual, so that there is no means by which one having even the most righteous claims upon the State can come at them except through this channel. Now as, between parties, a discount is nothing else than a modified form of suit, in which the defendant claims of the plaintiff some right which he might enforce in a suit at law; and if, in an action at the suit of the treasurers, a defendant might avail himself of such a right, it would have all the effects of a direct suit against the State, and thus the power oí disposition over the revenue would be transferred to the Courts of Justice, instead of abiding in the Legislature, where the constitution confided it. Take, for example, the case of a tax collector, who is sued on his bond for a defalcation in paying over taxes, and, as a sett off or discount, claims compensation for some meritorious service rendered to the State. If that were allowed, it is obvious the revenue would be under the control of the court and jury, and not the Legislature. With regard to the propriety or impropriety of applying the debt due by the State to the defendant, to the payment of his debt due to the Bank, it is enough that the court have no control over it. Men may well differ about it, and if the Legislature can be satisfied that it has been misapplied, they have the power, and will, doubtless, correct it.
Motion refused.
O’Neall, J. concurred.
Note. — By the Acts of 1839, 6 Stat. 401, and 1843, 11 Stat. 247, the return of tax executions is required to be made within six months; “ and in default thereof, it shall he the duty of the treasurer to issue execution against”,the sheriff, for the amount of the executions, “ with interest thereon, at the rate of five per cent, per month, from the time he should have paid the same : Provided, that he be allowed credit for nulla bona executions as heretofore.” R.

 6 Stat. 9.