The opinion of the Court was delivered by
Wardlaw, J.
In the discussion of this case, attempts have been made to range the order which was made for quashing all the proceedings, either under the head of staying proceedings fpr incurable defect, or under that of dismissing proceedings for want of jurisdiction.
Proceedings are sometimes upon motion stayed for irregularity; but all objections for mere irregularity are so reacjily waived and remedied, that the general rule in respect to them is, that they must be made at the earliest opportunity, or, as it has been expressed, in the first instance, else they will not avail (a) A different rule however prevails as to substantial defects which make the proceedings null and void. As that which is void cannot be confirmed, these defects have their proper influence whensoever they may be brought to view; and the Court only declares the nullity which before existed, when. *481 it refuses upon motion grounded on such a defect, to let further progress be made in a proceeding which is vain and useless.(a) These defects have the same effect, whether the motion be made before or after judgment. They will generally be found to arise from some matter dehors the record, and to exist in cases where there has been a cognovit, or a judgment by default, or some event of a suit different from the actual trial of an issue.(b)
Apart from these anomalies of irregularity and defect, the rules of pleading and practice direct the course to be taken by each party in most of the conceivable conditions of a cause, and settle the order in which allegations and objections shall be made, and the effect' of all omissions, misstatements, waivers and defaults. That which was ground for plea in abatement or special demurrer cannot be recurred to after plea in bar, general demurrer, or interlocutory judgment for default. If the plaintiff has in a count so stated his case as to show no sufficient cause of action, the defendant may demur. A verdict for plaintiff cures many omissions and defective statements in a count, which are not inconsistent with its allegations, and which it must be presumed were proved before the verdict could have been obtained. If after proper intendments and presumprtions made to support a verdict, the record still shows that no cause of action has been stated by the plaintiff, the defendant may, before entry of judgment, make in the Court of Appeals his motion in arrest of judgment. And matter which would plainly be sufficient upon motion in arrest of judgment, will upon the trial sustain a motion for nonsuit; for the Court will not idly render a judgment which it sees a party may arrest and desires to arrest.(c) But as on the motion in arrest intendments and presumptions are made to support the verdict, so *482 upon the motion for nonsuit the proof which has been properly heard will be considered; and if, with the aid of that proof, a verdict would be sustained, nonsuit for defect of the count will not be granted. Neither a defendant moving for nonsuit, nor one moving in arrest is in the same condition as if he had demurred. It follows that a defect, which upon demurrer might be fatal, cannot be presented on motion before trial, without demurrer and without proof, unless it is of such a kind that even after judgment it would vitiate the proceedings.
Under this view it suffices to ask ourselves if a judgment against these defendants personally rendered upon these proceedings would be a nullity. If not, why should they upon motion, before trial, be allowed to bring under consideration matters which would serve them upon motion in arrest of judgment or motion for nonsuit ? If the matters are curable by verdict or proof, why should a demurrer be tried on motion before issue joined? If the matters have been waived, why should there now be an indirect recurrence to them? It is useless to say more as to imputed irregularities or defects in the proceedings.
But it is said that the Court had not jurisdiction, and that therefore the proceedings were properly dismissed from the forum.
Every Court for its own dignity’s sake should abstain from all futile proceedings — of its own motion or upon suggestion of party or friend, it should at any time stop an attempt to obtain its judgment or invoke its power in a matter which is clearly not within its jurisdiction, and as to which all that might be done by it, or in its name, would be void.(a) Privilege may be waived by neglect to plead it in due time; but an objection to the jurisdiction, because a party to be affected by the judgment is not before the Court, or because a party or the subject 'matter of the suit is exclusively within the cognizance of another *483 tribunal, is at all times fatal.(a) The Court may hear such objection in any summary mode; and the recognition of its validity must result of course in the declaration, that all-which has taken place in the cause touching the person or matter out of the jurisdiction is void, and that nothing more of that nature shall be done.
It is said here that the State cannot be sued — that the Court has no power by judgment against agents of the State to draw money from the public treasury — that the plaintiff’s statements on the record show that he is proceeding to make the defendants liable on a contract made with them as public agents— and, that as a judgment for him would be void, it should not be rendered.
The Court is a superior one in favor of whose jurisdiction all presumptions should be made; but it pretends not to have power either to render judgment against the State or to draw money from the public' treasury without legislative appropriation. It has, however, jurisdiction over all persons, not especially exempt — officers as well as private individuals — corporations and quasi corporations, as well as natural persons. It has cognizance of all ordinary contracts, as well those made with public agents as others. The defendants are then within its jurisdiction — the subject matter of the suit is a contract for work and labor, plainly within the jurisdiction; and the objection is, that the plaintiff has stated his case so as to show that he contracted with thé defendants as public agents. Let this be admitted, and let it be further admitted that, in the absence of plain proof to the contrary, public agents shall be presumed to have contracted in their public capacity, and a party who contracted with them shall be presumed to have looked to the government and not to the agents. The result, even upon the supposition that there is no evidence to rebut the presumption, is only that the plaintiff cannot maintain his action according to his own *484 showing. Why then should not the defendants demur ? Or, if they are unwilling to risk that, and do not dread the effect of proof on the trial, why should they not move for a nonsuit, or in case of a verdict against them, move in arrest of judgment, according to established practice ? Why should the plaintiffs proof be excluded, and a special practice be adopted for his ease ? A case is not out of the jurisdiction, because it cannot be maintained; and, even though it be bad, it is entitled to a regular hearing.(a)
Government agents are personally responsible if they have by express agreement made themselves so; — if their public character was unknown to the party they contracted with — if they have obtained money illegally under color of office, and received notice of an opposing .claim before they paid the money over; — if they exceeded their authority in making the contract — if they have in hands a fund appropriated to meet the contract, or have power to raise a public fund for that purpose.(b) By showing any of these matters, the presumption which ordinarily attends a contract with a government agent is rebutted. As Chancellor Kent says, the distinction between public and private agents “terminates in a question of evidence.”(c)
It is argued, however, that the plaintiff’s case is not cognizable, because he cannot insist on any rebutting matter in contradiction of his count, and that that shows a contract with known public agents, and contains no averment of their express agreement for personal liability, nor of funds in their hands, nor of authority exceeded by them. In this argument the premises do not lead to the conclusion — they oppose it. Impliedly it is admitted that judgment may under proper allegations and proofs be had against a public agent, and, consequently, that a suit against such an agent is within the *485 jurisdiction of the Court; — for the sufficiency of the allegations and proofs must be judged of by the Court. The very order which has been made for quashing the proceedings is an exercise of jurisdiction in the cause — a decision made in an unusual mode, not that the defendants cannot be sued in the Court, but that the plaintiff has pleaded unskilfully, or proceeded irregularly.
Let us however see what appears upon the face of the proceedings. 'The writ is against the defendant’s nominatim, “ Chairman and Commissioners for the New State Capitol.” If this would leave it doubtful whether the plaintiff was suing individuals, or was suing a quasi corporation which they were supposed to constitute, the subsequent part of the writ is more plain, in which he requires answer to be made “for certain promises and assumptions by the said William J. Bull & others, the defendants, to him made and not performed.” It is not easy to conjecture plausible grounds upon which a motion could have been made to set aside the writ standing simply.
The declaration recites the writ, and then alleges that “the said defendants ” being indebted, assumed, &c.
So far, it surely cannot be said that on the face of the proceedings plainly appears an action against' the defendants as public agents, or as a quasi corporation. But the bill of particulars, enumerating the items of work and labor, is headed “ Commissioners of the New State Capitol, Dr;” and this, it is said, makes the allegations of the declaration plainly amount to the statement of a contract made with the defendants as public agents.
It is not indispensable, to the decision of the question now before us, to oppugn this inference which has been-drawn from the bill of particulars; but an examination of the purpose and effect of a bill of particulars, will show that this inference (from which the plaintiff’s statement of an action not maintainable, the defendants nonliability to suit, and the want of jurisdiction in the Court, have been deduced) is itself far from being clear.
A bill of particulars is a specification of the items of a de *486 mand, which has been stated in general terms in the declaration.(a) It is intended to give notice to the defendant. It differs from the declaration inasmuch as the one declares the nature and legal effect of the plaintiff’s claim, the other its component ingredients. It is not to be construed with the strictness applied to a declaration, for as Heath, J., observed, “ We must not drive parties to special pleaders to draw their bills of particulars;” and, therefore, in an action for money paid, a bill of particulars was held sufficient in these words: “ To seventeen firkins of butter ¿£55;” this serving to show, as Mansfield, C. J. said: “ That the claim for money had arisen on account of this butter.” For want of a bill of particulars, where one is necessary, the defendant may decline to plead and may move the Court to take the declaration from the file, or, as we have decided, may demur specially; but it is said, that where there is a bill of particulars, the plaintiff’s proof shall not be inconsistent with it. This is true in its proper sense. The plaintiff shall offer no evidence of an item notin the bill;(b) but an unnecessary statement, which accompanies the specification of items, should be construed so as to consist with the general demand made in the count, rather than to contradict it, and should not exclude proof that would consist with both the demand and the specification. If, to a count for goods sold, to defendant A., a plaintiff should annex a bill of particulars specifying goods sold, and headed “ B, Dr. to plaintiff,” evidence offered by the plaintiff to show that A. had directed him to furnish goods to B, upon A’s responsibility, would be consistent with the purpose of the bill of particulars, and with the allegations made. The question would be, to whom was the credit given ? The form of the bill of particulars, like an entry in a day-book, would be evidence that the credit was given-to B, but *487 neither would be conclusive. And here the heading of the bill of particulars would be evidence to strengthen the ordinary presumption, that the plaintiff dealing with known public agents, had relied only on the credit of the State; but it is a rigid construction, which holds that this heading amounts to an admission of what is thus presumed, so irrebutable that evidence shall not be heard to show a special agreement under which the defendants, known to be acting as public agents, expressly assumed a personal responsibility. If, upon proof, a verdict should be rendered for the plaintiff, could not the intendment be made that an express promise had been shown, or something else proved' which would sustain the verdict ? This would be only the presumption of something which ought to have been proved before the verdict could have been properly obtained, and which even if its allegations wpuld have been held essential on general demurrer, is not inconsistent with the allegations that have been made. Intendment may not contradict, but it may supply omissions.(a)
But suppose the plaintiff has plainly shown that he contracted with the defendants as public agents and relied only on the ciedit of the State. It follows that he cannot recover. If that is really plain on the face of the proceedings and is fatal to the action, it would be seen as well on demurrer as on motion. If it is an incurable defect, it would serve for nonsuit on the trial, or arrest of judgment afterwards. There are many cases where government agents have been sued, but none has been found where proceedings were quashed on that account. The ease of the Governor of Quebec is a leading case to show that without special circumstances, public agents do not incur personal liabilities;(b) but that, like all the other cases on the subject, shows that the Court actually exercised jurisdiction to hear and determine.(c) The Baltimore *488 case against Mr. Jefferson, President of the United States, and the U. S. Marshal, and the case where a mandamus against Mr. Madison, Secretary of State, was prayed in the Supreme court,(a) afford no countenance to the notion that from considerations of public policy, public officers are, like the., sovereign, above the process of the courts. Mr. Dexter made defence in an action brought against him on a contract made by him as Secretary of War.(b) Lord Palmerston answered and submitted to the judgment of the Court, in the case of an implied assumpsit alleged to have arisen from his acts as Secretary at War.(c) The law concerning the liability, of public agents is too well settled, for alarm to be excited by a suit against such an agent. We must not suppose that in this case the law will not be enforced, or that truth will not be perceived, and therefore by departure from regular practice, endeavor to give speedy immunity to those, who by established principles, in the ordinary course of justice, will be safe if truth is on their side. The mere liability to actions, even unsuccessful ones, it has been suggested, may deter fit and prudent persons from accepting office. We cannot therefore exempt all officers from personal accountability, without inquiry into the circumstances of cases, nor can we know what a case is until we have heard it. Every man is liable to groundless and malicious suits; the law gives, at least, costs as a reparation for the injury done to him by such a suit, but it cannot in justice and expediency restrain its tribunals from hearing complaints made even against those to whom office has been entrusted.
It is ordered that the order made for quashing the writ and other proceedings in this case be set aside ; and that the defendants have leave, at or before the next term, to vacate the order for judgment on the usual terms.
Withers, Whither, Glover and Munro, JJ., concurred.

 Sellon’s Prac. 102.

 Hewitson vs Hunt, 8 Rich.

 Mills & Co. vs. Dickson & Mills, 6 Rich. 492; 2 Brev. 176.

 Gale vs. Hays, 3 Strob. 456; 2 Brev. 370.

 5 Rich. Eq. 495.

 Miller vs. Miller, 1 Bail. 242; Mannhardt vs. Suderstrom, 1 Binn. 142.

 6 Pet. 691; 9 John. 239; 3 Barn. & Ald. 213; 3 Strob. 3.

 Story on Agency, Sect. 306—7.

 2 Kent’s Com. 633.

 Smith vs. Lehr 1 Mille, 240; Leigh's Prac. 374; 1 Camp. 69, note; Brown vs. Hodgson. 4 Taunt. 189.

 Davis vs. Hunt, 2 Bail. 412.

 Com. Dig. Pleader, c. 87.

 Macbeath vs. Haldimand, 1 T. R. 172.

 Stoben vs. Motte, 13 Vermont, 175.

 Marbury vs. Madison, 1 Cranch, 673.

 Hodgson vs. Dexter, 1 Cranch, 345.

 Gidly vs. Palmerston, 3 B. & Bing. 275.