285 S.C. 243 (1985)
329 S.E.2d 741
Jamie McCALL, by his Guardian ad Litem, Joan ANDREWS, Respondent,
v.
Frankie BATSON and The School District of Greenville County, Appellants.
22290
Supreme Court of South Carolina.
Heard October 16, 1984.
Decided April 18, 1985.
*244 William M. Grant, Jr., and F. Matlock Elliott, both of Haynsworth, Perry, Bryant, Marion & Johnstone, of Greenville, for appellants.
Edward W. Miller, of Miller & Paschal of Greenville, for respondent.
Heard Oct. 16, 1984.
Decided April 18, 1985.
NESS, Justice:
Appellants Batson and the School District of Greenville demurred to the causes of action for negligence and intentional infliction of emotional distress asserting that the tort actions were barred by sovereign immunity. The trial court overruled the demurrers and we affirm. We hereby abolish the doctrine of sovereign immunity as set forth below.
Issues of novel impression ordinarily should not be resolved on demurrer. Hanselmann v. McCardle, 270 S.C. 367, 242 S.E. (2d) 421 (1978). The issue of sovereign immunity, however, has been fully developed by the parties and extensively addressed in prior decisions of this Court. Therefore, the reasoning of Hanselmann, supra, is inapplicable.
South Carolina formerly afforded immunity to both governmental and charitable entities. We eliminated the State's immunity from suit based upon its contractual obligations in Kinsey Construction Company Inc. v. S.C. Department of Mental Health, 272 S.C. 168, 249 S.E. (2d) 900 (1978). Thereafter, we abolished charitable immunity in Fitzer v. Greater Greenville South Carolina Young Men's Christian Association, 277 S.C. 1, 282 S.E. (2d) 230 (1981). This Court's view of the antiquated doctrine of sovereign immunity was foreshadowed *245 in the dissents in Boyce v. Lancaster County Natural Gas Authority, 266 S.C. 398 at 403, 223 S.E. (2d) 769 at 771 (1976) and Belue v. The City of Spartanburg, 276 S.C. 381 at 384, 280 S.E. (2d) 49 at 50 (1981).
The trend towards abolition of sovereign immunity in other jurisdictions was recognized by the South Carolina Court of Appeals in Shea v. State Department of Mental Retardation, 279 S.C. 604, 310 S.E. (2d) 819 (App. Ct. 1983). As noted in Shea, thirty-six other jurisdictions have abolished sovereign immunity in whole or in part  some judicially, some legislatively.
More than twenty years ago this Court noted that the doctrine had come under fire as being "archaic and outmoded." McKenzie v. City of Florence, 234 S.C. 428, 435, 108 S.E. (2d) 825, 828 (1959). The Court suggested that any change of the doctrine should come from the legislature. Id. The Court has expressly urged the legislature to address the rule. Copeland v. Housing Authority of Spartanburg, 282 S.C. 8, 316 S.E. (2d) 408 (1984); Belton v. Richland Memorial Hospital, 263 S.C. 446, 211 S.E. (2d) 241 (1975). The exceptions that have been carved out by the legislature reflect a scattered patchwork of sovereign liability that lacks continuity, logic or fairness.[1]
*246 Even in affirming the continued validity of the rule, the Court has heretofore expressed "serious reservations about the soundness and fairness of the doctrine." Belton v. Richland Memorial Hospital, 263 S.C. at 451, 211 S.E. (2d) 241.
It is not necessary to laboriously analyze the doctrine and its inequities. Few principles of modern law have been so uniformly criticized. See, Holytz v. Milwaukee, 17 Wis. (2d) 26, 115 N.W. (2d) 618 (Wis. 1962). Sovereign immunity can no longer be tolerated in this State.
We next consider how we can fairly and efficiently accomplish the abolition of sovereign immunity.
We hold the abrogation of the rule will not extend to legislative, judicial and executive acts by individuals acting in their official capacity. These discretionary activities cannot be controlled by threat or tort liability by members of the public who take issue with the decisions made by public officials. We expressly decline to allow tort liability for these discretionary acts. The exercise of discretion includes the right to be wrong.
The legislature may find it necessary to take some action to prepare the state and local subdivisions of government for their new tort liability. For that reason we delay the implementation of this decision to allow the legislature to address any problems or hardships created by the abrogation of sovereign immunity. Other states have recognized the potential problems and have abolished sovereign immunity prospectively.
We hereby abolish the doctrine of sovereign immunity as it applies to the state and all local subdivisions of the government, subject to the following limitations:
(1) Sovereign immunity will not bar recovery in this case;
(2) Sovereign immunity will not bar recovery in any case currently pending or in those filed on or before July 1, 1986, provided the defendant has liability insurance coverage. Recovery shall not exceed the limits of the liability insurance coverage.
(3) Sovereign immunity shall not apply to any case filed after July 1, 1986.

*247 (4) This opinion does not abolish the immunity which applies to all legislative, judicial and executive bodies and to public officials who are vested with discretionary authority, for action taken in their official capacities.
By this opinion, we expressly overrule all previous decisions of this Court which uphold sovereign immunity. See Appendix A.
Batson's remaining exception is without merit, and is affirmed pursuant to Supreme Court Rule 23.
We affirm and remand for trial in accordance with this opinion.
Affirmed and remanded.
HARWELL, J., concurs.
CHANDLER, J., concurs in separate opinion.
LITTLEJOHN, C.J., and GREGORY, J., dissenting.

APPENDIX A
While perhaps not a complete listing of all the cases affected by this decision, the following cases are overruled to the extent that they hold that an action may not be maintained against the State without its consent:
1. Copeland v. Housing Authority of Spartanburg, S.C., 282 S.C. 8, 316 S.E. (2d) 408 (1984).
2. Hanna v. McCain, 277 S.C. 419, 288 S.E. (2d) 810 (1982).
3. Reed v. Medlin, 276 S.C. 604, 281 S.E. (2d) 125 (1981).
4. McKenzie v. McKenzie, 276 S.C. 461, 279 S.E. (2d) 609 (1981).
5. Little v. City of Myrtle Beach, 276 S.C. 417, 279 S.E. (2d) 131 (1981).
6. Tucker v. Kershaw Cty. Sch. Dist., Etc., 276 S.C. 401, 279 S.E. (2d) 378 (1981).
7. Belue v. City of Spartanburg, 276 S.C. 381, 280 S.E. (2d) 49 (1981).
8. Watford v. S.C. Highway Dep't, 273 S.C. 463, 257 S.E. (2d) 229 (1979).
9. Teague v. Cherokee Cty. Memorial Hospital, 272 S.C. 403, 252 S.E. (2d) 296 (1979).

*248 10. Lyon v. City of Sumter, 272 S.C. 359, 252 S.E. (2d) 118 (1979).
11. Kinsey Constr. Co., Inc. v. S.C. Dep't of Mental Health, 272 S.C. 168, 249 S.E. (2d) 900 (1978).
12. Wright v. City of Charleston, 271 S.C. 515, 248 S.E. (2d) 480 (1978).
13. Roddey v. Lyle, 268 S.C. 424, 234 S.E. (2d) 236 (1977).
14. Boyce v. Lancaster County National Gas Authority, 266 S.C. 398, 223 S.E. (2d) 769 (1976).
15. Hazard v. S.C. State Highway Dep't, 264 S.C. 386, 215 S.E. (2d) 438 (1975).
16. Morris v. S.C. State Highway Dep't, 264 S.C. 369, 215 S.E. (2d) 430 (1975).
17. Truesdale v. S.C. Highway Dep't, 264 S.C. 221, 213 S.E. (2d) 740 (1975).
18. Belton v. Richland Memorial Hospital, 263 S.C. 446, 211 S.E. (2d) 241 (1975).
19. Graham v. Charleston County School Bd., 262 S.C. 314, 204 S.E. (2d) 384 (1974).
20. Harrison v. S.C. Tax Comm'n., 261 S.C. 302, 199 S.E. (2d) 763 (1973).
21. Division of General Services v. Ulmer, 256 S.C. 523, 183 S.E. (2d) 315 (1971).
22. Elmwood Cemetery Ass'n v. Wasson, 253 S.C. 76, 169 S.E. (2d) 148 (1969).
23. Vance v. S.C. Tax Comm'n, 249 S.C. 214, 153 S.E. (2d) 841 (1967).
24. Stanley v. S.C. State Highway Dep't, 249 S.C. 230, 153 S.E. (2d) 687 (1967).
25. Chilton v. City of Columbia, 247 S.C. 407, 147 S.E. (2d) 642 (1966).
26. Campbell v. S.C. State Highway Dep't, 244 S.C. 186, 135 S.E. (2d) 838 (1964).
27. Jones v. Jones, 243 S.C. 600, 135 S.E. (2d) 233 (1964).
28. Cochran v. City of Sumter, 242 S.C. 382, 131 S.E. (2d) 153 (1963).
29. Brazell v. City of Camden, 238 S.C. 580, 121 S.E. (2d) 221 (1961).
30. Hollifield v. Keller, 238 S.C. 584, 121 S.E. (2d) 213 (1961).
31. Pinkston v. Morrall, 236 S.C. 601, 115 S.E. (2d) 286 (1960).

*249 32. Moseley v. S.C. Highway Dep't, 236 S.C. 499, 115 S.E. (2d) 172 (1960).
33. Hinson v. A.T. Sistare Construction Co., 236 S.C. 125, 113 S.E. (2d) 341 (1960).
34. Furr v. City of Rock Hill, 235 S.C. 44, 109 S.E. (2d) 697 (1959).
35. McKenzie v. City of Florence, 234 S.C. 428, 108 S.E. (2d) 825 (1959).
36. Mullins Hospital v. Squires, 233 S.C. 186, 104 S.E. (2d) 161 (1958).
37. Clarke v. City of Greer, 231 S.C. 327, 98 S.E. (2d) 751 (1957).
38. Fairey v. City of Orangeburg, 227 S.C. 458, 88 S.E. (2d) 617 (1955).
39. Bell v. City of Anderson, 226 S.C. 145, 84 S.E. (2d) 343 (1954).
40. Hicks v. City of Columbia, 225, S.C. 553, 83 S.E. (2d) 199 (1954).
41. Hill v. City of Greenville, 223 S.C. 392, 76 S.E. (2d) 294 (1953).
42. Jeff Hunt Mach. Co. v. State Highway Dep't, 217 S.C. 423, 60 S.E. (2d) 859 (1950).
43. Rice Hope Plantation v. S.C. Pub. Ser. Auth., 216 S.C. 500, 59 S.E. (2d) 132 (1950).
44. Abernathy v. City of Columbia, 213 S.C. 68, 48 S.E. (2d) 585 (1948).
45. Sanders v. State Highway Dep't, 212 S.C. 224, 47 S.E. (2d) 306 (1948).
46. Prudential Ins. Co. v. Murphy, 207 S.C. 324, 35 S.E. (2d) 586 (1945).
47. Rushton v. S.C. State Highway Dep't, 207 S.C. 112, 34 S.E. (2d) 484 (1945).
48. Bell v. S.C. State Highway Dep't, 204 S.C. 462, 30 S.E. (2d) 65 (1944).
49. Athanas v. City of Spartanburg, 196 S.C. 19, 12 S.E. (2d) 39 (1941).
50. Gasque v. Town of Conway, 194 S.C. 15, 8 S.E. (2d) 871 (1940).
51. Brooks v. One Motor Bus, Etc., 190 S.C. 379, 3 S.E. (2d) 42 (1939).
52. Home Building & Loan Ass'n v. City of Spartanburg, 185 S.C. 353, 194 S.E. 143 (1937).

*250 53. Cooper v. S.C. Highway Dep't, 183 S.C. 155, 190 S.E. 499 (1937).
54. Jennings v. Sawyer, 182 S.C. 427, 189 S.E. 746 (1937).
55. Singleton v. City of Sumter, 180 S.C. 536, 186 S.E. 535 (1936).
56. Bomar v. City of Spartanburg, 181 S.C. 453, 187 S.E. 921 (1936).
57. Sheriff v. City of Easley, 178 S.C. 504, 183 S.E. 311 (1936).
58. Harris v. Fulp, 178 S.C. 332, 183 S.E. 158 (1935).
59. Argent Lumber Co. v. Query, 178 S.C. 1, 182 S.E. 93 (1935).
60. Terrell v. City of Orangeburg, 176 S.C. 518, 180 S.E. 670 (1935).
61. Jackson v. City of Columbia, 174 S.C. 208, 177 S.E. 158 (1934).
62. Federal Land Bank v. State Highway Dep't, 172 S.C. 174, 173 S.E. 284 (1934).
63. Looper v. City of Easley, 172 S.C. 11, 172 S.E. 705 (1934).
64. Sherbert v. School Dist. No. 85, Spartanburg County, 169 S.C. 191, 168 S.E. 391 (1933).
65. Davis v. City of Greenville, 168 S.C. 476, 167 S.E. 682 (1933).
66. Reeves v. City of Easley, 167 S.C. 231, 166 S.E. 120 (1932).
67. Baker v. State Highway Dep't, 166 S.C. 481, 165 S.E. 197 (1932).
68. Owens v. State Highway Dep't, 165 S.C. 180, 163 S.E. 473 (1932).
69. Sawyer v. State Highway Dep't, 164 S.C. 53, 161 S.E. 883 (1932).
70. Ancrum v. State Highway Dep't, 162 S.C. 504, 161 S.E. 98 (1931).
71. Chick Springs Water Co. v. State Highway Dep't, 159 S.C. 481, 157 S.E. 842 (1931).
72. Fann v. State Highway Dep't, 155 S.C. 219, 152 S.E. 429 (1930).
73. United States Casually Co. v. State Highway Dep't, 155 S.C. 77, 151 S.E. 887 (1930).
74. Oswald v. City of Orangeburg, 154 S.C. 105, 151 S.E. 230 (1930).

*251 75. Randal v. State Highway Dep't, 150 S.C. 302, 148 S.E. 57 (1929).
76. Monarch Mills v. S.C. Tax Comm'n, 149 S.C. 219, 146 S.E. 870 (1929).
77. Stewart v. City Council of Charleston, 134 S.C. 398, 132 S.E. 678 (1926).
78. Sirrine v. State, 132 S.C. 241, 128 S.E. 172 (1925).
79. Morrah v. Dr. John De La Howe Industrial School, 120 S.C. 197, 113 S.E. 70 (1922).
80. Gilchrist v. City Council of Charleston, 115 S.C. 367, 105 S.E. 741 (1921).
81. Mullinax v. Hambright, 115 S.C. 22, 104 S.E. 309 (1920).
82. Triplett v. City of Columbia, 111 S.C. 7, 96 S.E. 675 (1918).
83. Parrish v. Town of Yorkville, 96 S.C. 24, 79 S.E. 635 (1913).
84. Irvine v. Town of Greenville, 89 S.C. 511, 72 S.E. 228 (1911).
85. Carolina Glass Co. v. State, 87 S.C. 270, 69 S.E. 391 (1910).
86. Scott v. Richland County, 83 S.C. 506, 65 S.E. 729 (1909).
87. Heape v. Berkeley County, 80 S.C. 32, 61 S.E. 203 (1908).
88. State ex rel. Lyon v. Murray, 79 S.C. 316, 60 S.E. 928 (1908), aff'd 213 U.S. 174, 29 S.Ct. 465, 53 L.Ed. 752 (1909).
89. Hopkins v. College, 77 S.C. 12, 57 S.E. 551 (1907), rev'd, 221 U.S. 636, 55 L.Ed. 890, 31 S.Ct. 654 (1911).
90. Bryant v. City Council, 70 S.C. 137, 49 S.E. 229 (1904).
91. Matheny v. City of Aiken, 68 S.C. 163, 47 S.E. 56 (1904).
92. Bramlett v. City of Laurens, 58 S.C. 60, 36 S.E. 444 (1900).
93. Pool v. Evans, 57 S.C. 78, 35 S.E. 436 (1900).
94. Butler v. Ellerbe, 44 S.C. 256, 22 S.E. 425 (1895).
95. Parks v. City Council, 44 S.C. 168, 21 S.E. 540 (1985).
96. Cope v. Hampton County, 42 S.C. 17, 19 S.E. 1018 (1894).
97. Walker v. Chester County, 40 S.C. 342, 18 S.E. 936 (1894).
98. Hill v. Laurens County, 34 S.C. 141, 13 S.E. 318 (1891).

*252 99. All v. Barnwell County, 29 S.C. 161, 7 S.E. 58 (1888).
100. Chapman v. City Council, 28 S.C. 373, 6 S.E. 158 (1887).
101. Chick v. Newberry County, 27 S.C. 419, 3 S.E. 787 (1887).
102. Lowery v. Thompson, 25 S.C. 416, 1 S.E. 141 (1886).
103. Jennings v. Abbeville County, 24 S.C. 543 (1886).
104. Whaley v. Gaillard, 21 S.C. 560 (1884), dismissed, 127 U.S. 216, 8 S.Ct. 1053, 32 L.Ed. 125 (1888).
105. Gibbes v. Town Council of Beaufort, 20 S.C. 213 (1883).
106. Young v. City Council of Charleston, 20 S.C. 116 (1883).
107. Black v. City of Columbia, 19 S.C. 412 (1883).
108. State v. Corbin & Stone, 16 S.C. 533 (1881).
109. Coleman v. Chester, 14 S.C. 286 (1880).
110. State v. Baldwin, 14 S.C. 135 (1880).
111. Ex Parte Dunn, 8 S.C. 207 (1875).
112. Dabney, Morgan & Co. v. Bank of the State, 3 S.C. 124 (1871), aff'd, 86 U.S. 1, 19 Wall. 1, 22 L.Ed. 90 (1874).
113. Hammarkskold v. Bull, 43 S.C.L. (9 Rich.) 474 (1856).
114. McKenzie v. Chovin, 26 S.C.L. (1 McMul.) 222 (1841).
115. White v. City Council of Charleston, 20 S.C.L. (2 Hill) 571 (1835).
116. Treasurers of S.C. v. Sureties of William Hilliard, 42 S.C.L. (8 Rich.) 412 (1832).
117. Treasurers v. Cleary, 37 S.C.L. (3 Rich.) 372 (1832).
118. Young v. Commissioner of Roads, 11 S.C.L. (2 Nott & McC.) 537 (1820).
119. Newberry v. Georgia Dep't of Industry and Trade, ___ S.C. ___, 322 S.E. (2d) 212 (S.C. App. 1984).
120. Carrington v. City of Spartanburg, ___ S.C. ___, 322 S.E. (2d) 28 (S.C. App. 1984).
121. Shea v. State Dep't of Mental Retardation, 279 S.C. 604, 310 S.E. (2d) 819 (S.C. App. 1983).
122. Toney v. S.C. Dep't of Education, 279 S.C. 484, 309 S.E. (2d) 773 (S.C. App. 1983).
CHANDLER, Justice (concurring in the opinion of Justice NESS):
I concur in full, but make additional comment I consider appropriate to abrogation of the long standing doctrine of sovereign immunity in South Carolina.

*253 ORIGIN OF THE DOCTRINE
Sovereign immunity is a court-created doctrine which was first applied in England in the 1788 case of Russell v. Men of Devon, 2 T.R. 667, 100 Eng. Rep. 359. In Men of Devon an injury sustained by a citizen through negligence of a county employee was held to be not actionable. While the court observed, "it is better that an individual should sustain an injury than the public suffer an inconvenience," this landmark decision has been more often cited for its holding that, "The king can do no wrong."
It is anomalous that Men of Devon, supra, should become the law of states which only 12 years earlier fought for liberation from wrongs of the king.
Although many reasons for the doctrine's adoption in this country have been advanced, the most cogent explanation is that following the Revolutionary War, the new states were financially unable to respond in damages to meritorious claims based upon negligence in their governmental activities. Boyce v. Lancaster County Natural Gas Authority, 266 S.C. 398, 405, 223 S.E. (2d) 769 (1976) (Ness, J., dissenting); Mayle v. Pennsylvania Dept. of Highways, 479 Pa. 384, 388 A. (2d) 709, 712 (1978).
For whatever the reasons, sovereign immunity remained the law of the states from its initial application in the 1812 Massachusetts case of Mower v. Leicester, 9 Mass. 247, until its abrogation in 1957 by the Supreme Court of Florida in Hargrove v. Town of Cocoa Beach, 96 So. (2d) 130 (Fla. 1957).

PREVAILING VIEW OF THE DOCTRINE TODAY
It is doubtful that any other tenet in American jurisprudence has been so broadly assailed as the doctrine of governmental immunity. It has been condemned on many grounds in court opinions and by legal scholars alike. Holytz v. City of Milwaukee, 17 Wis. (2d) 26, 115 N.W. (2d) 618, 621 (1962).
The doctrine has been sharply criticized by courts throughout the country, including a minority of our Court, as an anathma to the legal precept that liability follows tortious conduct, that one who negligently causes harm should respond in damages. Molitor v. Kaneland Community Unit District No. 302, 18 Ill. (2d) 11, 163 N.E. (2d) 89, 93, 86 *254 A.L.R. (2d) 469, 476 (1959); Belue v. City of Spartanburg, 276 S.C. 381, 388, 280 S.E. (2d) 49 (1981) (Ness, J., dissenting).
Since its abrogation in Hargrove, supra, there has been a dramatic national trend toward repudiation of the doctrine. As pointed out by the South Carolina Court of Appeals in Shea v. State Department of Mental Retardation, 279 S.C. 604, 310 S.E. (2d) 819 (App. Ct. 1983), courts in 36 jurisdictions have abolished portions of sovereign immunity.
Quotations from the opinions of all state court decisions abolishing sovereign immunity would be enlightening, but too lengthy. A brief citation of language from representative opinions suffices to illuminate the general disfavor in which the doctrine is viewed.
"Whatever justification ever existed for the doctrine that the Commonwealth is immune from liability for tortious conduct unless the Legislature has consented to suit, the doctrine's day has long since passed." Mayle v. Pennsylvania Dept. of Highways, 388 A. (2d) 709 (Pa. 1978).
"If there is anything more than a sham to our constitutional guaranty that the courts shall always be open to redress wrongs and to our sense of justice that there shall be a remedy for every wrong committed, then certainly this basis for the rule cannot be supported." Hargrove, supra, at 132.
"While we are not compelled to follow the example of other courts, we are persuaded by their logic and adopt their conclusion. One of the paramount interests of the members of an organized civilized society is that they be afforded protection against harm to their persons, properties and characters." Nieting v. Blondell, 306 Minn. 122, 235 N.W. (2d) 597, 602 (1975).
"It is plainly unjust to refuse relief to persons injured by the wrong conduct of the State. No one seems to defend that refusal as fair. There has been a steady movement away from immunity." Willis v. Dept. of Conservation and Economic Development, 55 N.J. 534, 264 A. (2d) 34, 36 (1970).
Perhaps the most candid, plain-spoken criticism of the doctrine is that in an Illinois decision involving, as here, the alleged negligence of a school district employee:

*255 It is a basic concept underlying the whole law of torts today that liability follows negligence, and that individuals and corporations are responsible for the negligence of their agents and employees acting in the course of their employment. The doctrine of governmental immunity runs directly counter to that basic concept. What reasons, then, are so impelling as to allow a school district, as a quasi-municipal corporation, to commit a wrong-doing without any responsibility to its victims, while any individual or private corporation would be called to task in court for such tortious conduct?
Molitor v. Kaneland Community Unit District No. 302, 18 Ill. (2d) 11, 163 N.E. (2d) 89, 93 (Ill. 1959).

SOVEREIGN IMMUNITY IN SOUTH CAROLINA
The doctrine was first applied in South Carolina in the 1820 case of Young v. Commissioners of Roads, 2 Nott and Mc. 537, 11 S.C.L. 215. Citing Men of Devon, supra, as its precedent authority the court denied recovery to a plaintiff who suffered property damages to his wagon and horses from a defective bridge maintained by the Edgefield district.
In the ensuing 165 years all torts inflicted by the negligence of state, county and municipal governments, including their colleges, hospitals, recreational parks, etc., have been immune from liability, except as legislatively provided in a miniscule number of statutes.
The majority opinion sets out those decisions of our Court since 1959 which chart the recent course of both sovereign and charitable immunity in South Carolina. Our holding today follows an established national pattern that the state which abolishes charitable immunity soon thereafter abrogates sovereign immunity. While the two immunities have retained their separate identities, they are closely kindred doctrines and exist to the same ends.

THE DOCTRINE v. STARE DECISIS
No rule is more deeply inbedded in Anglo-American decisional law than stare decisis, nor has any rule been more responsible for perpetuating sovereign immunity.
*256 Meaning literally "to stand by decisions" it has for its object the salutary effect of certainty and stability in law. People v. Gravenhorst, 32 N.Y.S. (2d) 760, 773 (1942).
While it is a sound principle and has been adhered to by this Court, it is not a rule from which no variance should ever be had.
Stare decisis is not intended to bring about a "petrifying rigidity" but, rather, to insure a quality of justice which results from certainty and stability. Brown v. Anderson County Hospital Assn., 268 S.C. 479, 486, 234 S.E. (2d) 873 (1977).
In 1980 our Court abolished parental immunity, notwithstanding stare decisis. "While this court adheres to the principle of stare decisis, it should not be applied to `effect a petrifying rigidity' in common law." Elam v. Elam, 275 S.C. 132, 137, 268 S.E. (2d) 109 (1980).
In abolishing charitable immunity, we stated, "A rule which no longer serves a legitimate purpose should not be followed solely because of a dogged adherence to stare decisis. Stare decisis should be used to foster stability and certainty in the law, but not to perpetuate error and injustice." Fitzer v. Young Men's Christian Association, 277 S.C. 1, 4 282 S.E. (2d) 230 (1981).

SOVEREIGN IMMUNITY: A LEGISLATIVE MATTER?
Aside from stare decisis the most persistent argument made for preserving sovereign immunity is that the doctrine has become a part of the public policy of the state and, accordingly, can be abolished by the legislature only. McKenzie v. City of Florence, 234 S.C. 428, 434, 436, 108 S.E. (2d) 825 (1959).
"If the law is to be changed, such change should come from the legislature." Copeland v. The Housing Authority of Spartanburg, S.C., 282 S.C. 8, 9, 316 S.E. (2d) 408 (1984).
This reasoning is curious in light of the unchallenged fact that the doctrine of sovereign immunity is court-created. It places upon the legislature, exclusively, the burden to correct an injustice not of legislative making.
No doubt the legislature is empowered to act, there being no constitutional issue involved. Hopefully, even now, the General Assembly will act, and by the effective date provisions *257 set out in the majority opinion, may do so prior to this decision's becoming law.
Indeed, now pending in the judiciary committees of both Houses of the General Assembly are comprehensive Tort Claims Bills[1] which address the wrongs and inequities of sovereign immunity.
Many state courts have reproached the legislative branch for its failure to abolish or modify the doctrine. I find this viewpoint misplaced.
In South Carolina, with the exceptions of this Court's modification of charitable immunity in Brown v. Anderson County Hospital Assn., 268 S.C. 479, 234 S.E. (2d) 873 (1973), followed by total abrogation in Fitzer, supra, all steps taken to moderate the harshness of charitable or sovereign immunity prior to today have been legislative. Admittedly, as pointed out in the majority opinion, the exceptions carved out by the legislature constitute a patchwork, and are inadequate and inconsistent.[2] However, I perceive them as good *258 faith efforts to correct in part what this decision corrects in full.
The doctrine, being court-created, may be court-abrogated.
"We closed our courtroom doors without legislative help, we can likewise open them." Boyce, supra, 266 S.C. at 406, 223 S.E. (2d) 769, citing Pierce v. Yakima Valley Memorial Hospital, 43 Wash. (2d) 162, 260 P. (2d) 765, 774 (1953) (dealing with charitable immunity) (Ness, J., dissenting).
"Surely it cannot be urged successfully that an outmoded, inequitable, and artificial curtailment of a general rule of action credited by the judicial branch of the government cannot or should not be removed by its creator." Holytz v. City of Milwaukee, 17 Wis. (2d) 26, 115 N.W. (2d) 618, 624 (Wis. 1962) (Emphasis supplied).

SOVEREIGN IMMUNITY: NO LONGER TENABLE
Our decision today is a natural response to history's postulate that the laws which govern society must be rational to the conditions of their times.
If it be conceded that financial instability of the new states in early days of the republic was good sufficient reason for adoption of the doctrine, that reason has long since expired.
A doctrine which issues from the maxim, "the king can do no wrong," is antagonistic to American democracy and, now that whatever may have justified its adoption has passed, should be abolished.
From my extensive review of case law decisions throughout the United States I conclude that, with little exception, perpetration of the doctrine is defended upon the grounds only of stare decisis, and that it is a matter for the legislature. This is understandable, as no substantive basis for preserving sovereign immunity any longer remains.
In respect of changing conditions, the financial ability of states to meet their obligations is now established. Beyond that, awesome technological advances have placed in the hands of governmental agents and employees machines and implements unknown in colonial days.
Judicial notice is taken that the automobile daily inflicts *259 injury and death. Other motorized vehicles and mechanical devices, too numerous to recite here, constitute a hazard to the safety of innocent citizens when negligently operated.
In short, the relative propensity for harm from tortious conduct of the government today and at the time of the doctrine's adoption are in stark contrast.
It is no less than incredible that a government which addresses the needs of its indigent through programs involving millions of tax revenue dollars, and properly so, should turn a deaf ear to those others of its citizens who, through no fault of their own, are victims of governmental torts.
Even if direct dollars from public funds were required to underwrite governmental liability in tort, the obligation should be met. However, the injustice of further perpetuating sovereign immunity is exacerbated by the availability today of liability insurance. This mechanism, whose premiums are miniscule when compared to overall governmental expenditures, has served to manage the costs assessed against private individuals and corporations by reason of their liability.

CONCLUSION
Under sufferance of sovereign immunity countless innocent members of the general society have braved human suffering, sustained property loss and undergone financial chaos without redress.
This is a travesty, exceeded only by the irony that the doctrine has long been removed from the law of England, who gave it birth.
LITTLEJOHN, Chief Judge, dissenting:
I respectfully dissent and would reverse the order of the Special Circuit Judge.
Today this Court by a bare majority vote upsets the well-established law and makes vulnerable to suit hundreds, if not thousands, of governmental entities which have heretofore been protected by the doctrine of sovereign immunity. The extent to which the doctrine is well-rooted is evidenced by the 122 cases enumerated in the majority opinion which will today be overturned. In my opinion, a matter of broad public policy is involved which should, under the separation *260 of powers, be left to the legislative body.
Today the Court invades the province of another branch of government. If the law is to be changed, it should be altered after the Legislature, with the aid of drafting bureaus, study commissions and the like, has given wide attention to the many ramifications which the Court from its ivory tower cannot perceive.
The fact that the Legislature has not taken the action which the Court today takes evidences its satisfaction with the rule of law applicable heretofore.
The Courts are often encouraged to delve into new matters on the theory that the Legislature should have acted and has not. I would exercise judicial restraint and leave the law unchanged with such time as the representatives of the people in the legislative halls speak.
GREGORY, Justice, dissenting:
I too dissent. This Court, through long established precedent cited by the majority, has consistently upheld the doctrine of sovereign immunity. Today's opinion departs from our prior decisions which hold any abrogation of the doctrine should be effected by the legislature.
Especially compelling is the comprehensive State Tort Claims Act presently pending before the General Assembly. Much study and planning have gone into the preparation of the Act which seeks an orderly abrogation of the doctrine. I agree the doctrine should be abrogated; however, I would defer to the wisdom of the legislature, firmly believing they are best suited to determine appropriate timing and limitations of any abrogation of the doctrine of sovereign immunity.
NOTES
[1] Senate Bill 283

House Bill 2266
NOTE: In the title of H. 2813, a 1984 predecessor Tort Claims Bill, the authors recognized the doctrine's unsoundness:
[W]hereas, the General Assembly of the State of South Carolina recognizes the merit in the modern tendency to restrict rather than to extend the application of the Doctrine of Sovereign Immunity; and
Whereas, the relationship between the government and its people has changed dramatically in the twentieth century and government has become involved in an ever-increasing number of services; and
Whereas, it is a sound principle of law that one who negligently causes injury must respond in damages; and
Whereas, public convenience can no longer outweigh the necessity for individual compensation for injuries sustained through the negligence of its government; and
Whereas, the General Assembly finds that it is in the best interest of the people of South Carolina that a governmental tort claims act be enacted and that the State waive its immunity for liability in tort inactions [sic] involving the proprietary functions of the State and consent to have his liability determined in accordance with the same rules as are applied to actions against individuals or corporations, subject to the provisions and limitations of this act. Now, therefore,...
[1] The State's liability for personal injuries resulting from negligently maintained highways, bridges, ferrys etc. is limited to $5,000 on a county maintained road. The same injury on a municipality maintained road allows recovery up to $15,000. S.C. Code Ann. §§ 57-5-810-860 (1976); § 5-7-70 (1976).
[2] LIMIT OF LIMIT OF
 DAMAGES DAMAGES
 (Personal (Property
STATUTE RELATING TO Injury) Loss)
§ 57-5-1810 State Highway Defects $ 8,000.00 $ 3,000.00
 XX-XX-XXX County Highway Defects 5,000.00 1,000.00
 5-7-70 Municipal Highway
 Defects 15,000.00 5,000.00
 5-7-70 Municipal Mismanagement,
 Generally 15,000.00 5,000.00
 XX-XX-XXX All Govt.-Operated Mtr.
 Vehicles 30,000.00 5,000.00
 XX-XX-XXX Rural Electrification
 Authority 4,000.00 1,500.00
 6-23-310 Joint Municipal
 Electrical Power
 Agencies IMMUNITY WAIVED AND WITHDRAWN

 NOTE: The inconsistency in legislative efforts to moderate
 the harshness of sovereign immunity is highlighted by
 the gross disparity of allowable damages in the highway
 defect statutes. In an actionable case, the person
 injured may recover up to $5,000.00 if the highway is
 owned by the County of Richland, $8,000.00 if owned by
 the State of South Carolina, and $15,000.00 if owned by
 the City of Columbia. Finally, if the injury-producing
 defect is located on government property any distance
 beyond the highway right-of-way, there can be no
 recovery.
 Moreover, as to municipalities only, recovery is also
 allowed ". . . by reason of a defect or mismanagement
 of anything under control of the corporation. . . ."
 [Emphasis supplied.]